# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARQUITOS WHITELAW,

    Plaintiff,

v.                                                                            Case No. 17-C-111

SGT. KOOTZ, et al.

    Defendants.

## SCREENING ORDER

The plaintiff filed a pro se complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on the plaintiff's petition to proceed in forma pauperis.

The prisoner lacks the funds to pay an initial partial filing fee. The initial partial filing fee is therefore **waived**. 28 U.S.C. § 1915(b)(4).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual

contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in Twombly by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. Id. If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Village of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

Here, the complaint alleges that the Plaintiff was suffering from suicidal thoughts while incarcerated at Waupun Correctional. He alleges that he told Sgt. Kootz that he needed to be placed in observation and that he was going to cut himself with a pen. The complaint states that he was then seen by "PSU" (presumably Psychological Services Unit) staff and placed in observation status. He was subjected to a full body search and given a suicide smock and rubber mattress. After the cell door was closed, he noticed a pair of socks near the door. Later, he told an Officer Web that he was going to kill himself with the pair of socks, to which the officer responded "no you're not" and then walked away. In response, the complaint states that the Plaintiff tied the socks around his neck and "layed on the floor and choked myself so hard and for so long I blacked out for a few seconds." (ECF No. at 3.) He did this three times.

The next day he also told Officer Woodard, who apparently had relieved Officer Web, that he was thinking of killing himself and that he had tried to do so with the pair of socks. Woodard told him to stop playing around and walked away laughing. In response, Plaintiff covered his window with the socks (he does not say how) and Woodard told him to take them down. Later,

3

Plaintiff again reiterated to Woodard that he was not kidding about killing himself, but again Woodward remained skeptical. Once again, Plaintiff "attempted suicide" with the socks, choking himself until his neck was in pain. This back-and-forth continued with yet another officer, who was similarly unmoved by the Plaintiff's threats, and ultimately the Plaintiff tied the socks to the foot of his bed and lay on the floor, trying once again to choke himself.

At one point, the Plaintiff states that one or more guards were pounding on the door telling him to stop. Finally, they entered and took the socks and the smock away from him. He asserts that he later asked to see a nurse because his neck hurt, but the cursory examination by the nurse found nothing worthy of medical attention. He seeks $400,000 in punitive and compensatory damages against Officers Woodard, Web, Kootz, Kelly, Schoulon, Mongie, and Nurse Ruffin.

Prison staff are under an obligation to prevent an inmate from harming himself. They can fulfill that obligation by, among other things, placing the inmate in observation status and removing any legitimately dangerous items, including belts or sharp objects, from his cell. A pair of socks, however, is not so inherently dangerous that it should be considered an implement of suicide or self-harm. Nowhere in the complaint is any suggestion that there was anything within the cell from which an inmate could have hanged himself. The court is unaware of anyone ever actually killing himself with a pair of socks, or even inflicting significant pain, absent the assistance of gravity and one's own body weight. *See, e.g., Estate of Schroeder v. Gillespie Cty.,* 23 F. Supp. 3d 775, 779 (W.D. Tex. 2014) ("Schroeder was hanging by his neck. . . . Schroeder had taken two socks, soaked them in water, tied them together, wedged them into the steel frame covering the light bulb on the ceiling of Cell E, and used them as a ligature.") The fact that the Plaintiff allegedly hurt his neck with the socks is not evidence that they were inherently dangerous. After all, even a naked inmate

4

in a completely bare cell may inflict much greater injury to himself simply by banging his head against a wall. Moreover, one expects that even a flimsy suicide smock could be fashioned as a means of choking oneself, but that does not render it impermissibly dangerous. So long as there is nothing by which to hang oneself, prison staff cannot be found violative of the Eighth Amendment merely for allowing an inmate to have a pair of socks. In fact, even when there *is* a means of hanging oneself, socks have not been found a cause for deliberate indifference. *Fath v. Borough of Coraopolis,* No. CIV.A.08-1216, 2010 WL 1816263, at *8 (W.D. Pa. May 3, 2010) (officers removed inmate's belt and shoelaces but inmate hanged himself with his socks. "In short, Officer Stewart did not disregard Mr. Fath's risk of suicide simply because officer Quinn did not also take Mr. Fath's socks.") This is particularly true when, as here, the officers placed the inmate on suicide watch and checked in on him repeatedly, finally removing the socks when they saw he was trying to choke himself. Given the fact that there was apparently nothing from which he could hang himself, it is not surprising that none of the officers took his threats particularly seriously. Finally, prison staff must consider the fact that they might be subject to suit if they *fail* to allow socks under such circumstances. *Bixler v. Shaw,* No. 10-CV-0745-CVE-FHM, 2012 WL 369536, at *2 (N.D. Okla. Feb. 3, 2012) (inmate alleged that the "detox tank" where he was held after his suicide attempt was cold, and staff refused to provide him socks for at least four weeks). In sum, the mere act of allowing an inmate on suicide watch to have a pair of socks does not give rise to a claim for deliberate indifference.

Similarly, there is no indication in the complaint that any of the staff was deliberately indifferent to the neck pain he allegedly caused himself. The complaint is silent as to what he believes would have been accomplished by seeing the nurse, apart perhaps from receiving ibuprofen

5

or some course of pain medication. Eventually the nurse viewed him through the cell window and concluded that his neck was fine. Although the complaint alleges his neck was in pain on one morning, that does not suffice to create a objectively serious medical condition that calls for treatment, especially when it is unclear what treatment could have accomplished. Allowing plaintiff's obvious but misguided attention-seeking behavior to blossom into a federal lawsuit would serve no one's interest and result in a waste of resources, both judicial and State, that could be better used in carrying out their respective responsibilities. Accordingly, the complaint will be dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed in forma pauperis be and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) **for failure to state a claim**.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has brought an action that was dismissed **for failure to state a claim.** **IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $350 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

**I FURTHER CERTIFY** that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3) unless the plaintiff offers bonafide arguments supporting his appeal.

**SO ORDERED** this 2nd day of February, 2017.

    /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court